*Affirmed.*

Opinion delivered May 8, 1886.

[No. 3972.]

## ED GEORGE v. THE STATE.

AGGRAVATED ASSAULT—EVIDENCE—TERM DEFINED.—"Serious bodily in-
jury," as those terms are used in sub-division 7, of Article 496 of the
Penal Code, means "such an injury as gives rise to apprehension; an
injury which is attended with danger." See the opinion, and the state-
ment of the case for evidence *held* insufficient to support a conviction for
aggravated assault, in as much as it fails to establish such serious bodily
injury as is contemplated by the statute,—the said injury consisting in
the biting off of a small piece out of the rim of the ear of the prose-
cuting witness.

APPEAL from the County Court of Guadalupe. Tried below
before the Hon. J. F. McKee, County Judge.

The conviction in this case was for an aggravated assault upon
the person of John Wilson, in Guadalupe county, Texas, on the
tenth day of April, 1885. A fine of twenty five dollars was
the penalty assessed against appellant.

John Wilson, the first witness for the State, testified that he
was the party upon whom the assault was made by the defendant.
Witness, at the time of the assault, was living on the defendant's
land, holding and cultivating twenty acres under a lease. The
contract between the two stipulated that the witness was to have
the exclusive use of a certain yoke of oxen during the term of
the lease. On the morning of the difficulty, the witness went to

the defendant's house to get the oxen, which the defendant had hitched to a wagon for the purpose of hauling wood. Witness demanded the oxen, and told defendant that, under the contract, he, defendant, had no right to use them. Defendant replied that the oxen belonged to him, and that he would use them whenever he pleased, and ordered witness to leave his premises. Witness said to him: "Ed, I have come after the oxen, and I don't intend to leave until I get them." Defendant replied by cursing the witness. Witness replied that he had not come to defendant's place to get into a difficulty, and started off. Defendant resumed his cursing, and called witness a "d—d black son-of-a-b—h." Witness stopped, and told defendant not to repeat that epithet; that he would not submit to such language from any one. The defendant again called witness a "d—d black son-of-a-b—h," and witness struck at him with his fist. He did not think his blow struck the defendant, but was not certain. Witness and defendant then clinched, and defendant bit off a small piece of the witness's ear. Witness made profert of the mutilated member. The witness, who was a stronger man than the defendant, then threw the defendant to the ground and held him there until taken off by Tom Williams. He made no effort to hurt or harm the defendant. Witness then left defendant's premises, and went to Seguin to confer with Mr. Greenwood, the custodian of the written contract, as to his rights under that instrument. Witness used no violent language to the defendant when he demanded the oxen. Tom Williams and no one else was present at the difficulty.

On cross-examination, the witness was asked if he did not tell James Greenwood, in Seguin, after the fight, that the defendant bit the piece out of his ear while he had the defendant down, beating him. He replied that he related the transaction to Greenwood just as he has related it on this stand. Defendant passed Greenwood and witness while they were talking, and witness remarked to Greenwood: "There goes Ed George now; I reckon he is going to make a complaint against me."

Tom Williams testified, for the State, that he was present and saw the difficulty between defendant and John Wilson. Wilson came to the defendant's house, and a quarrel ensued about a yoke of oxen. Defendant ordered Wilson off his premises, and called him a "d—d black son-of-a-b—h" two or three times. Wilson finally told defendant that he would not take "son-of-a-b—h" from any body, and warned him not to apply that term to

him again.   The defendant repeated that Wilson was a "d—d black son-of-a-b—h."   Wilson struck defendant on the forehead with his fist, and the two clinched.   Wilson, who appeared to be the stronger man, threw the defendant two or three times.   Defendant fell the last time, back down, across a log, when some one at the house called to witness to stop the difficulty.   The witness then pulled Wilson off of the defendant, and observed for the first time that a piece had been bitten from the rim of Wilson's ear.   Wilson used no harsh or violent language to the defendant before or during the fight, and manifested no anger until defendant called him a "d—d-son-of-a-b—h."

James Greenwood testified, for the defense, that on the day of and after the difficulty, Wilson told him that defendant bit the piece out his ear while he had the defendant down, beating him, and that he supposed the defendant would prosecute him.

The motion for new trial assailed the evidence as insufficient to support the conviction, and complained that the fine assessed against the defendant was excessive.

*James Greenwood,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE.   This is a conviction for aggravated assault. The cause was tried by the judge without a jury, and a fine of twenty-five dollars was imposed.

The circumstance relied upon to show that the assault was aggravated was that a serious bodily injury was inflicted upon the person assaulted.   The evidence shows that defendant during the fight bit off a small portion of the prosecuting witness's ear. The injured member was exhibited for the court's inspection, and showed that a small portion of it had been bitten off. Another witness says that "Wilson had a piece bitten out of the rim of his ear."   The question presented is, was there shown such "serious bodily injury" as is contemplated by subdivision 7, Article 496, Penal Code?

By the term "serious bodily injury" is meant such an injury as gives rise to apprehension,—an injury which is attended with danger.   (Webster's Dictionary.)   We are of the opinion that the evidence fails to show such an injury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*