## ED GOODMAN v. THE STATE.

No. 3251.  Decided December 20, 1905.

**1.—Manslaughter—Charge of Court—Adequate Cause.**

On trial for murder, where there was some evidence with reference to the conduct of deceased towards the wife and sister of defendant reflecting upon said females, there was no error in the court's charge to mention as adequate cause such conduct of deceased towards the female relatives of defendant, and such charge was favorable to and for the benefit of defendant.

**2.—Same—Charge of Court—Adequate Cause—Personal Conflict—Harmless Error.**

On a trial for murder, where the court charged that it was adequate cause to reduce the homicide to manslaughter, if the evidence showed that there was a serious personal conflict by which great injury was inflicted upon the person of defendant by deceased with a knife, etc., but the record showed that there was only a slight wound inflicted by deceased upon the defendant. Held while such charge was not authorized, yet in connection with the previous charge of the court, and in as much as it enlarged his right of defense of manslaughter, the error was harmless.

**3.—Same—Charge of Court—Manslaughter—Adequate Cause.**

Where on trial for murder, there was evidence tending to show that deceased committed an assault and battery upon defendant inflicting a slight wound which may have caused pain or bloodshed, and that defendant charged deceased with theft of money from him, etc., the court properly charged that all these matters were adequate causes to reduce the homicide to manslaughter, if all or any portion of the same were true and the jury believed defendant's passion was thereby aroused so as to render his mind incapable of cool reflection, provided he was not acting in self-defense.

**4.—Same—Charge of Court—Deadly Weapon of Deceased.**

On a trial for murder, where the evidence showed that the size or character of the knife which deceased used is not shown, and that the wound inflicted thereby on defendant was simply described by looking at it, and not by actual probing, and seemed to be about one-fourth of an inch long, to a quarter or a half inch deep, there was no error in the court failing to instruct the jury that if they believed that deceased assaulted defendant with a knife and the same was a deadly weapon that the law presumed the intent of deceased to kill defendant; or to leave this issue to the jury.

**5.—Same—Charge of Court—Superiority of Strength.**

On a trial for murder, there was no error in not charging article 677, Penal Code, with reference to superiority of strength, violent assault, etc., as there was no evidence to support it, and it would have been calculated to embarrass defendant's right under the charge of self-defense.

**6.—Same—Charge of Court—Self-Defense—Threats.**

On trial for murder, where the court first defined in his charge the law of self-defense and applied it to the facts, as viewed from the standpoint of defendant, and also charged on self-defense coupled with threats, there was no error.

**7.—Same—Provoking a Difficulty—Harmless Error.**

On a trial for murder, where the court gave an adequate charge on self-defense without regard to appellant having armed himself, and instructed the jury that if he was attacked by deceased in such manner as from his standpoint endangered his life or person he would have the right to kill deceased, and safeguard appellant's rights without regard to the purpose for which he may have armed himself, etc., there was no error in charging on provoking the difficulty as the evidence amply warranted such a charge. See opinion for court's charge and requested charges submitted upon this phase of the case.

**8.—Same—Misconduct of Jury.**

Where on motion for new trial, the complaining affidavit of two jurors as to misconduct in the jury room, were denied by the affidavits of nine of the jurors, and that they did not agree beforehand to be bound by lot, and the court overruled the motion predicating a new trial on this ground, there was no error.

**9.—Same—Remarks of Judge.**

Where on a motion for new trial which was then pending, the trial judge lectured the jury commissioners in regard to their duties and that they should not select men who would make affidavit impeaching their verdict, which matter occurred by inadvertence, and the record showed that the jurors engaged in the trial preceding the motion pending had previously made affidavits for the State contravening the affidavit of two of their fellows, and that such lecture in their presence could not have operated to intimidate them, there was no error.

Appeal from the District Court of Erath.   Tried below before Hon. W. J. Oxford.

Appeal from a conviction of manslaughter; penalty, two years and six months imprisonment in the penitentiary.

The opinion states the case.

*Riddle & Keith, Nugent & Carter,* for appellant..—On charge of adequate cause: Biscoe v. State, 11 S. W. Rep., 113; Ross v. State, 10 Texas Crim. App., 455; Taylor v. State, 13 id., 184; Hardin v. State, id., 192; Lynch v. State, 24 id., 350.   On question of deadly weapon in hands of deceased: Pierce v. State, 21 Texas Crim. App., 540. On misconduct of jury: Anschicks v. State, 6 Texas Crim. App., 524; McKissick v. State, 26 id., 673; Lucas v. State, 27 id., 322.   On question of provoking a difficulty: Hutchinson v. State, 42 S. W. Rep., 992.

On question of violent attack: Pierce v. State, 22 Texas Crim. App., 540; 2 Bishop Crim. Law, secs. 32–34.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of manslaughter, and his punishment assessed at two years and six months confinement in the penitentiary, and prosecutes this appeal. This is the second appeal. See 83 S. W. Rep., 195. The facts developed on this trial are substantially the same as presented on the former trial, to which reference is here made.

Appellant contends, that the court committed an error, among other things, in submitting to the jury as adequate cause the conduct of deceased toward the wife and sister of defendant, because on the trial of the case he says that there was no evidence offered or admitted that even tended to show that the killing of deceased by appellant was caused by the conduct of deceased towards either the wife or sister of appellant. We do not agree to this contention. The record shows there was some testimony to the effect that the parties (appellant's mother and wife) went down to deceased that morning, to see about the report of the girls being seen in the woods with some boys and writing notes to some boys. One of the girls was the sister of appellant. This was talked about directly after the parties stopped in front of deceased's house, and in the course of the conversation it seems deceased said the report about the girls being seen down there with the boys was true. We think that this authorized the court to give the charge complained of. At any rate, we fail to see how such a charge could possibly work injury to appellant. The charge was given for his benefit, and he was found guilty of manslaughter.

Among other things the court, as a ground of adequate cause for manslaughter, instructed the jury that it was adequate cause to reduce the homicide to manslaughter, if the evidence showed that there was a serious personal conflict by which great injury was inflicted upon the person of the defendant by deceased with a knife, or instrument of violence, if any, or by means of great superiority of personal strength, although the person guilty of the homicide were the aggressor, etc. The contention here being that there was no evidence of a serious personal conflict by which great injury was inflicted on the person of defendant by deceased; but the fact being that there was only a slight wound inflicted by deceased on appellant something like a scratch on the back of his neck or shoulders with a knife. It is further contended that this charge was liable to confuse the jury in regard to appellant's right of self-defense; if there was no evidence of a personal conflict, in which great violence was used by deceased on appellant, then appellant could not invoke self-defense on this ground. We agree that the testimony in this respect is as stated by appellant. While the court was not authorized to give the charge, yet, as observed, with reference to

the previous charge, we fail to see how it could work any possible injury to appellant. It really enlarged his right of defense of manslaughter, without any evidence to support it, and did not, in the absence of evidence, tend to deprive him of any right of self-defense.

Appellant complains of the entire charge on manslaughter, and assigns reasons why said charge is erroneous, referring to his bills of exception. Aside from the objections heretofore discussed, it occurs to us that there is no question as to the authority for the remainder of said charge. There is some testimony tending to show that deceased committed an assault and battery upon defendant, and inflicted a slight wound on him with a knife, which may have caused pain or bloodshed. There is testimony showing that deceased charged appellant with theft of money from him. The jury were told that all these matters (including those heretofore discussed) were adequate causes to reduce to manslaughter, and if any or a portion or all of the same were true, and they believed appellant's passion was thereby excited, and he was rendered incapable of cool reflection, and killed deceased, the offense would be manslaughter, provided that the same was not done in self-defense, as hereinafter charged. If the court had not given these matters in charge to the jury, appellant would have had just ground of complaint.

Appellant insists that the court committed serious error in not instructing the jury if they believed deceased assaulted appellant with a knife, and the same was deadly, the law in such case presumes that the intent on the part of the deceased was to kill defendant, or the court should have at least submitted the issue to the jury whether or not said knife was a deadly weapon. In reply to this we would state, that the size or character of the knife is not shown in this record. The only testimony we find in the statement of facts, bearing on this point at all, is that the witness Ben Goodman was shown a knife during the trial which he thought looked something like the knife, "but I think the knife Pittman had tapered so much to a point. I may have identified that knife on the first trial of the case. It has the same resemblance that the knife did, but the point is not so sharp." The dimensions and character of the knife, how long the blade was, its size, etc., are nowhere described. If we judge by the wounds inflicted, it was said to be a slight wound in the back. So we are left completely in the dark as to the character of the knife used. If a party was charged with an aggravated assault and battery with a deadly weapon, and such was the proof it could not be sustained. Hilliard v. State, 17 Texas Crim. App., 210; Wilson v. State, 34 Texas Crim. Rep., 64; Martinez v. State, 33 S. W. Rep., 970. It does not occur to us that the testimony required of the court to submit the character of weapon here used to the jury as to whether it was deadly, much less was the court required to instruct the jury that it was a deadly weapon.

Appellant contends that the court should have given article 677, Penal Code, in charge to the jury. This article is based on a violent

assault made by deceased on appellant by weapons, or on account of great superiority of strength, etc. As stated before, there is no evidence of a violent assault on the part of deceased on appellant. A charge on this subject, without evidence to support it, would have been calculated to embarrass appellant, because as it was he had a charge on self-defense untrammeled, and under this article, he would have been required to resort to all other means for the prevention of the injury, except retreating, before he would have been authorized to kill.

Appellant further insists that the court's charge on self-defense is erroneous. The court gave in outline the principles governing the right of self-defense; telling the jury that a person who is unlawfully attacked, is not bound to retreat to avoid the necessity of killing his assailant, and that it was not necessary to the right of self-defense that the danger should have in fact existed. The person threatened with apparent danger has the same right to defend against it and to the same extent that he would were the danger real. And in determining whether there was reason to believe the danger did exist, the appearances must be viewed from the standpoint of the person who acted upon them; and from no other standpoint. The court then instructed the jury, in effect, if they believed defendant killed deceased, he was justified in doing so, if he did so, to prevent Pittman from murdering or inflicting serious bodily injury upon him, the defendant; provided it reasonably appeared to defendant by the acts or by the words coupled with the acts of Pittman, viewed from the defendant's standpoint, that it was the purpose and intention of Pittman to murder or inflict serious bodily injury upon him, the defendant; and provided the killing took place while Pittman was in the act of murdering or inflicting serious bodily injury upon him, the defendant; viewed from the standpoint of the defendant," etc. In addition to this, the court gave a charge on self-defense coupled with threats.

Appellant also assigns as error the charge of the court on provoking the difficulty. As stated in the opinion on the former appeal, we think the evidence amply warranted the court in giving a charge on provoking the difficulty. The fact that in this connection the court required the jury to believe that appellant came in search of deceased, armed for the purpose of killing him, perhaps imposed an additional burden on the State, which the court was not required to do, still appellant cannot complain of this. Appellant criticises the counterpart of this charge on provocation, on the ground, that the court also instructed the jury, if they believed appellant armed himself with a pistol, for the purpose of defending himself against an unlawful attack or threatened attack of deceased, and met with deceased, and deceased attacked him, etc., his right of self-defense would not be compromitted. The criticism here being that the court imposed the burden on appellant that he should have armed himself in order to defend himself, whereas it is contended that it did not matter why defendant armed himself, if deceased attacked him he had a right to defend himself. This is correct as a

legal principle. Hutchinson v. State, 42 S. W. Rep., 992. But in view of the fact that the court gave an adequate charge on self-defense, without regard to appellant having armed himself, and instructed the jury that if appellant was attacked by deceased, in such manner as from his standpoint endangered his life or his person, he would have the right to kill deceased; this, and the charge on self-defense, in connection with threats, fully safeguarded appellant's rights, without regard to the purpose for which he may have armed himself; and the fact that the court subsequently told the jury in another charge that, if appellant armed himself, for his protection, and deceased attacked him, that his right of self-defense would be perfect, it does not occur to us, was calculated to confuse the jury or to jeopardize his right of self-defense. In the absence of the previous charge it may have been so calculated, as suggestive to the jury that before appellant would have the perfect right of self-defense, he must have armed himself for his protection. Besides, at the request of appellant, the court gave a charge in which the jury were instructed that, if the jury believed deceased, before Ed Goodman had said anything to him, or made any demonstrations towards challenging him to deny the accusation of theft made against him by deceased's wife, and that defendant thereupon denied the same, and the jury further believe that the conduct, etc., of deceased toward the defendant, provoked him to make such denial, then and in that event, defendant had the right to defend himself against any attack made upon him by said Pittman under such circumstances, and if you so find, you will acquit him, or if the jury had a reasonable doubt thereof to acquit. This gave the defendant the benefit of a charge on his phase of the proposition, and guaranteed him the perfect right of self-defense regardless of how he came to be armed. Moreover, there was some testimony to the effect that appellant did arm himself that morning for his protection against deceased, because of threats made against him by deceased, and appellant requested a charge on this subject, which the court refused. In connection with the charge complained of, appellant raises another point, to the effect that this and the subsequent charge, although given at the request of defendant and read to the jury by the judge, were not embraced in the court's charge, and the court in his charge told the jury that his charge embraced all the law of the case. The complaint is, that the jury could not have understood that the two requested charges given were also a part of the law of the case. The court explains that he informed the jury that said charges were given by him as a part of the law of the case. We apprehend that the jury, being men of ordinary intelligence, understood that this was so.

In view of what we have said with reference to the court's charge and in view of the fact that in our opinion, it covered all of the salient features of the case, both for the State and the defendant, we do not believe that the court was required to give the special requested instruction asked by appellant.

Appellant excepted to the argument of private counsel for the State, but as explained by the court it does not occur to us that it was reversible error.

Appellant contends that this case should be reversed on account of the misconduct of the jury while deliberating upon the case, and refers us to the affidavits of the jurors, Hutchins and Weaver. This was contested by the State, and affidavits filed contravening the defendant's affidavits, in which nine of the jurors joined, being all of the remainder of the jury except one, to wit: Tate, who evidently was not found. The court heard the evidence on the matter, and overruled the motion for new trial predicated on this ground. We think the court was authorized to do this. Nine jurors denied in effect the affidavits of the jurors, Hutchins and Weaver, as to what occurred in the jury room, both as to the former trial and as to the agreement to decide the number of years by lot. These nine jurors show what the juror Hutchins said as to the former trial, to wit: That Leonard (the foreman) replying to a question stated, that he got eight years at a former trial,—did not occur. The testimony also shows that while the jurors each put down the number of years they would give appellant, and divided the sum by twelve, they did not agree beforehand to be bound by the result, and were not so bound. As stated, we do not believe the court committed error in this connection.

Appellant reserved an exception to the lecture given by the judge to the jury commissioners whom he was empaneling about the time the investigation was being made of the misconduct of the jury: said lecture being with regard to their duties. Among other things he told said jury commissioners not to select men who would make affidavits impeaching their verdicts. The explanation of the court shows that this matter occurred by inadvertence, so far as the jurors were concerned. It is further shown that the nine jurors who testified had previously made affidavits for the State contravening defendant's case on the motion. So that it does not occur to us that the remarks of the court, on the presence of said nine jurors, could have operated to intimidate or bulldoze the jury, as they had already stated, in effect, their testimony by affidavit. Of course, a judge should be careful when a matter of this character is to be investigated, to say nothing which would intimidate the members of the jury, or restrain them from giving their testimony freely and voluntarily.

We have carefully examined the record, and in our opinion there is no such error as would authorize a reversal. The evidence, in our view, supports the verdict of the jury; and the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### February 14, 1906.

HENDERSON, JUDGE.—The case was affirmed at the Tyler Term, and is now before us on rehearing. Appellant insists that the court

is in error with reference to the charge on manslaughter, or that portion thereof predicated on adequate cause, in which a serious personal conflict ensued by which great injury was inflicted upon the person of the defendant by the deceased with a knife or other instrument of violence or by means of great superiority of strength, etc. We said in the original opinion in substance that there was no testimony to authorize this charge; but in view of the finding of the jury, and other portions of the charge of the court on manslaughter as also the charge on self-defense, it was not liable to confuse the jury. We see no reason to change the views expressed in said original opinion on that subject.

Appellant also seriously insists that the court was in error on failing to predicate a charge on the deadly character of the knife used by deceased, and in that connection insists that we were in error in not quoting all the testimony in regard to the size of said knife. As stated by counsel, we failed to state the size of the wound. It is shown to have been a wound in the back, said by witness to be from a quarter to a half inch deep, and being a stab straight in; and about one-fourth of an inch long. The testimony of this witness was based on no actual probing but a superficial examination, evidently by merely looking at the wound. It does not occur to us that this additional feature is sufficient, in connection with the testimony stated in the original opinion, to characterize the knife as a deadly weapon. See the authorities cited in the original opinion. Consequently we adhere to the proposition that the court was not required to give an instruction based on the deadly character of the weapon used by deceased. The court's charge was full on self-defense, both on actual and apparent danger; and we think under the circumstances of this case said charge was sufficient to secure appellant's right in the trial before the jury.

We do not deem it necessary to go into a further discussion of the jury question, nor the other questions presented in the motion for rehearing. The motion is accordingly overruled.

*Overruled.*